JOHN DOE, AS FATHER AND NEXT FRIEND OF JANE DOE,
A MINOR CHILD, APPELLANT, V. OMAHA PUBLIC SCHOOL
DISTRICT, A POLITICAL SUBDIVISION, APPELLEE.

727 N.W.2d 447

Filed February 16, 2007.    No. S-05-794.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, and K.C. Engdahl, of Ballew, Schneider, Covalt, Gaines & Engdahl, for appellant.

Kirk S. Blecha and Lindsay K. Lundholm, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

John Doe, as father and next friend of Jane Doe, brought this action against the Omaha Public School District (OPS) under the Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1997 & Cum. Supp. 2002). OPS moved to dismiss, claiming immunity under § 13-910. The district court granted the motion and dismissed the complaint with prejudice. Doe perfected this timely appeal. We conclude the district court erred in dismissing the action and therefore reverse, and remand for further proceedings.

## I. BACKGROUND

Doe alleged in his complaint that on February 26, 2004, a student identified as J.D. sexually assaulted his daughter Jane during school hours at the OPS high school they both attended. Doe alleged on information and belief that OPS "had actual knowledge that J.D. had a history of physical and/or sexual misconduct toward other students" before the purported assault but "took no steps to restrict or restrain" J.D.'s activities in order to protect other students. Doe alleged that OPS was negligent in, among other things, (1) failing to provide adequate protection to Jane from the foreseeable acts of J.D., (2) failing to follow State Department of Education rules on student safety, (3) failing to supervise school employees, (4) failing to investigate prior complaints about J.D., (5) failing to take appropriate actions with regard to J.D., and (6) maintaining unsafe premises which enhanced the threat of and enabled criminal activity without detection on school grounds and during school hours. Doe claimed that these acts or omissions by OPS caused Jane physical injury and emotional distress, for which he sought damages on her behalf.

OPS moved to dismiss under Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003), claiming that Doe's complaint failed to state a claim upon which relief could be granted. In its motion, OPS asserted that as a political subdivision of the State of Nebraska, it retained immunity from suit under § 13-910 based on the fact that Doe's claims arose out of (1) an assault; (2) OPS' exercise of due care in the execution of officially adopted resolutions, regulations, and rules; and (3) OPS' exercise of discretionary functions. OPS also asserted in its motion that Doe's complaint failed to allege facts sufficient to show the negligence elements of duty, breach, and causation.

At a hearing on the motion to dismiss, both parties offered evidence which was received without objection. In a written order, the district court determined that OPS was immune from the negligence claims alleged in Doe's complaint based on the exceptions found in the PSTCA, and it therefore granted the motion to dismiss with prejudice. Doe perfected this timely appeal, and we granted his petition to bypass the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(2) (Reissue 1995).

## II. ASSIGNMENT OF ERROR

Doe assigns that the district court erred in concluding that his complaint failed to state a claim upon which relief could be granted.

## III. STANDARD OF REVIEW

We begin by addressing a procedural issue affecting the nature and scope of our review. Because a rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the claim's substantive merits, a court may typically look only at the face of the complaint to decide a motion to dismiss. *Ferer v. Erickson, Sederstrom*, 272 Neb. 113, 718 N.W.2d 501 (2006). Dismissal under rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Johnson v. Johnson*, 272 Neb. 263, 720 N.W.2d 20 (2006); *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005). An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006); *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006). When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Id.*

However, rule 12(b) provides that when matters outside of the pleadings are presented by the parties and accepted by the trial court with respect to a motion to dismiss under rule 12(b)(6), the motion "shall be treated" as a motion for summary judgment as provided in Neb. Rev. Stat. §§ 25-1330 to 25-1336 (Reissue 1995 & Cum. Supp. 2006) and the parties shall be given reasonable opportunity to present all material made pertinent to such a motion by statute. See, *Crouse v. Pioneer Irr. Dist.*, 272 Neb. 276, 719 N.W.2d 722 (2006); *Wise v. Omaha Public Schools*, 271 Neb. 635, 714 N.W.2d 19 (2006). Our review of an order granting a motion for summary judgment is not restricted to the allegations of the complaint, but instead requires that we determine whether the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as

to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See, *Ferer v. Erickson, Sederstrom, supra*; *Wise v. Omaha Public Schools, supra.*

■ As a threshold matter, we must determine whether we are reviewing a ruling on a motion to dismiss or a ruling on a motion for summary judgment. Because Nebraska's current notice pleading rules are modeled after the Federal Rules of Civil Procedure, we look to federal decisions for guidance. See *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005). Federal courts have recognized that when receiving evidence which converts a motion to dismiss into a motion for summary judgment, it is important for the trial court to "give the parties notice of the changed status of the motion and a 'reasonable opportunity to present all material made pertinent to such a motion'" by the rules governing summary judgment. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 at 188 (3d ed. 2004). See, e.g., *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001 (8th Cir. 2000). We agree with and adopt this principle.

In this case, the trial court did not indicate that its receipt of evidence converted the motion to one for summary judgment, and neither party contends that a conversion occurred. We have recently held that a court may take judicial notice of matters of public record without converting a rule 12(b)(6) motion to dismiss into a motion for summary judgment. *In re Adoption of Kenten H.*, 272 Neb. 846, 725 N.W.2d 548 (2007); *Ferer v. Erickson, Sederstrom*, 272 Neb. 113, 718 N.W.2d 501 (2006). The exhibit offered by OPS and received by the district court without objection purports to include copies of public records, including the "Omaha Public Schools Nondiscrimination Policy" and the "Omaha Public Schools, 2003-2004 Student Code of Conduct." The exhibits offered by Doe and received without objection consist of copies of motions purportedly filed by OPS in an action brought by Doe in the U.S. District Court for the District of Nebraska and copies of discovery requests which Doe served on OPS in this action. Although the district court did not specifically take judicial notice of these exhibits in receiving them, we assume without deciding that it could have done so.

In any event, the evidence offered by OPS did not directly address the factual allegations of Doe's complaint and therefore did not establish the absence of a genuine issue of material fact. On the record before us, OPS would be entitled to prevail only if the district court correctly concluded that the complaint failed to state a claim upon which relief could be granted. Accordingly, we apply the standard of review applicable to orders granting motions to dismiss, as set forth above. See, *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006); *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006).

## IV. ANALYSIS

### 1. DOE'S PRIMA FACIE CASE

The district court did not specifically address the question of whether Doe's complaint alleged a prima facie case. As an alternative ground for affirmance, OPS argues that it did not. We deem it necessary to address this potentially dispositive issue.

■ The PSTCA eliminates, in part, the traditional immunity of political subdivisions for the negligent acts of their employees. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996). Except as otherwise provided, in all suits brought under the PSTCA, "the political subdivision shall be liable in the same manner and to the same extent as a private individual under like circumstances." § 13-908. Public school districts are political subdivisions for purposes of the PSTCA. See § 13-903(1).

■ As noted above, Doe's complaint asserts a personal injury claim based upon allegations of negligence imputed to OPS, a political subdivision. A negligence action brought under the PSTCA has the same elements as a negligence action against a private individual, i.e., duty, breach of duty, causation, and damages. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 262 Neb. 66, 628 N.W.2d 697 (2001); *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997). A duty is defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006). Whether a duty exists at all is a question of law. *Stahlecker v. Ford Motor Co.*, 266 Neb. 601, 667 N.W.2d 244 (2003); *Cerny v. Cedar Bluffs*

*Jr./Sr. Pub. Sch., supra.* Defining the scope of an existing duty is likewise a question of law. *Stahlecker v. Ford Motor Co., supra.*

OPS "does not dispute that a general duty of care exists to furnish security for the student body," but argues that it would have a duty to protect specific students from harm by another student only if the other student's conduct was "sufficiently foreseeable." Brief for appellee at 26. We agree. See *Sharkey v. Board of Regents*, 260 Neb. 166, 182, 615 N.W.2d 889, 902 (2000) (holding that public university "owes a landowner-invitee duty to its students to take reasonable steps to protect against foreseeable acts of violence on its campus and the harm that naturally flows therefrom").

Neb. Ct. R. of Pldg. in Civ. Actions 8(a)(2) (rev. 2003) requires a party asserting a claim to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Doe alleged that prior to the date of the alleged assault on his daughter, OPS "had actual knowledge that J.D. had a history of physical and/or sexual misconduct toward other students" but "took no steps to restrict or restrain" him. OPS argues that this allegation is insufficient to raise an issue of foreseeability. We disagree. The allegation places OPS on notice that Doe is claiming that it had prior knowledge of specific behaviors on the part of J.D. which made his alleged subsequent violent conduct reasonably foreseeable. Greater factual specificity is the object of discovery. Whether the alleged assault in this case was foreseeable is a matter of proof. See *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999). Construing the allegations of the complaint in a light most favorable to Doe, as we are required to do at this stage of the proceeding, we conclude that it is sufficient under our notice pleading rules to state a claim for relief under the PSTCA.

## 2. OPS' AFFIRMATIVE DEFENSES

A political subdivision retains its sovereign immunity with respect to certain listed exceptions found in the PSTCA. See § 13-910. The exceptions set forth in § 13-910 are affirmative sovereign immunity defenses to claims brought pursuant to the PSTCA. *Harris v. Omaha Housing Auth.*, 269 Neb. 981, 698 N.W.2d 58 (2005). If a political subdivision proves that a plaintiff's claim comes within an exception pursuant to § 13-910, then

the claim fails based on sovereign immunity, and the political subdivision is not liable. *Id.*

In its motion to dismiss, OPS alleged that it is entitled to immunity based upon three of the exceptions in § 13-910. We have not previously addressed the manner in which affirmative defenses are to be considered with respect to a rule 12(b)(6) motion. We agree with the prevailing view among federal courts that

> [a] complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy; but for this to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion.

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 708-10 (3d ed. 2004). In other words, a motion to dismiss a complaint may be granted where "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Id.* at 713.

Within this analytical framework, we address each of the three affirmative defenses upon which OPS bases its claim of immunity.

### (a) § 13-910(7) Intentional Tort Exception

OPS argues that because the complaint specifically alleges a claim arising from an assault, it retains sovereign immunity under § 13-910(7). Section 13-910(7) states that the PSTCA shall not apply to "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Doe responds that because the assailant was not alleged to be an agent or employee of OPS, the intentional tort exception in § 13-910(7) does not apply. To resolve the issue, we must determine the breadth of the phrase "[a]ny claim arising out of assault" as it is used in § 13-910(7).

The exception would clearly preserve immunity in the circumstance where a political subdivision was alleged to be vicariously liable to the victim of an assault committed by an employee of the political subdivision acting in the scope of employment. In *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005), we

held that the identical provision in the State Tort Claims Act preserved sovereign immunity as to a claim that the State negligently hired and supervised a correctional officer who allegedly committed an assault while on duty. Adopting the reasoning of a concurring opinion in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), which construed an identical provision in the Federal Tort Claims Act, we reasoned that when a tort claim arising from an assault is based on "the mere fact of government employment" or "on the employment relationship between the intentional tort-feasor and the government," the intentional tort exception preserves sovereign immunity. *Johnson v. State*, 270 Neb. at 323, 700 N.W.2d at 625, citing *Sheridan v. United States, supra* (Kennedy, J., concurring in judgment).

In this case, there is no allegation that the assailant was an agent or employee of the political subdivision. We have not previously considered whether the intentional tort exception in the PSTCA preserves immunity in this circumstance. We again look to *Sheridan* for guidance.

In *Sheridan*, a serviceman who worked at a naval hospital remained in the building after finishing his shift. He became intoxicated and then left the building with a loaded rifle in his possession. Other hospital employees were aware that he was intoxicated and armed, but did not try to prevent him from leaving the building and did not report the incident. Later that evening, the off-duty serviceman fired the rifle at a vehicle, injuring one of the occupants. The injured person brought an action against the government under the Federal Tort Claims Act, alleging negligence on the part of hospital employees who permitted the off-duty serviceman to leave the hospital with a loaded weapon in violation of certain regulations. In reversing a judgment that the claim was barred by the intentional tort exception of the Federal Tort Claims Act, which uses language identical to that of § 13-910(7), the U.S. Supreme Court distinguished between a liability claim arising entirely from an assault and a claim based upon negligently allowing an assault to occur. The Court determined that the case fell in the latter category, in that the governmental liability was not based upon the off-duty serviceman's intentional acts, but, rather, upon the negligence of other government employees

who did not prevent the armed individual from leaving the naval hospital or report his violation of regulations to the appropriate authorities. The Court concluded:

> If nothing more was involved here than the conduct of [the off-duty serviceman] at the time he shot at petitioners, there would be no basis for imposing liability on the Government. The tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not itself give rise to Government liability whether that conduct is intentional or merely negligent.
>
> As alleged in this case, however, the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the off-duty serviceman's] employment status. By voluntarily adopting regulations that prohibit the possession of firearms on the naval base and that require all personnel to report the presence of any such firearm, and by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to "perform [its] 'good Samaritan' task in a careful manner."

*Sheridan v. United* States, 487 U.S. 392, 401, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), citing and quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S. Ct. 122, 100 L. Ed. 48 (1955).

We find this reasoning persuasive and applicable to this case. Doe's claim is not based upon the assault itself, and he could not prevail merely by proving that it occurred. Rather, he alleges that *before* the alleged assault, OPS breached an independent legal duty, unrelated to any possible employment relationship between the assailant and OPS, to take reasonable steps to prevent foreseeable violence from occurring on its premises. See *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000). See, also, *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005). The claim therefore does not arise from an assault, but, rather, from an alleged negligent failure to protect a student from a foreseeable act of violence. Accordingly, the complaint does not clearly indicate the applicability of a defense under § 13-910(7) which would legally bar the relief sought.

### (b) § 13-910(2) Discretionary Function Exception

In its motion to dismiss, OPS alleged that it was immune from suit on the alternative ground that Doe's claim arose from the exercise of "discretionary functions and duties." Section § 13-910(2) states that the PSTCA shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." Although it is unclear whether the district court relied upon this provision in determining that OPS had immunity, we must examine the issue of whether discretionary function immunity is necessarily apparent on the face of the complaint so as to require dismissal.

The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000). See, also, *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994). The discretionary function exception extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. *Norman v. Ogallala Pub. Sch. Dist., supra; Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999). The exception does not extend to the exercise of discretionary acts at an operational level. See, *Norman v. Ogallala Pub. Sch. Dist., supra; Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996); *Jasa v. Douglas County, supra; Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993). "'"[I]t is the nature of the conduct, rather than the status of the actor that governs whether the discretionary function exception applies in a given case."'" *Security Inv. Co. v. State*, 231 Neb. 536, 544, 437 N.W.2d 439, 445 (1989). Examples of discretionary functions include the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards. *Norman v. Ogallala Pub. Sch. Dist., supra*. The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of

public policy. *Parker v. Lancaster County Sch. Dist. No. 001, supra*. The political subdivision remains liable for negligence of its employees at the operational level, where there is no room for policy judgment. *Norman v. Ogallala Pub. Sch. Dist., supra*. Doe argues that the exception could not apply because his claims are directed at conduct at the operational level of OPS, not at the policy level.

A court engages in a two-step analysis to determine if the discretionary function exception applies. First, the court must consider whether the action is a matter of choice for the acting employee. *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004); *Parker v. Lancaster Cty. Sch. Dist. No. 001, supra*. If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield. *Aguallo v. City of Scottsbluff, supra*; *Parker v. Lancaster Cty. Sch. Dist. No. 001, supra*.

When the facts are undisputed, the determination of whether the discretionary function exception applies is a question of law. *Parker v. Lancaster County Sch. Dist. No. 001, supra*; *Jasa v. Douglas County, supra*. By the same token, however, it is often difficult to undertake such an analysis without a complete factual record. For example, in *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998), we were unable to determine from the allegations of a petition whether the alleged negligence of a county in carrying out flood warnings involved discretionary policy-level decisionmaking or operational-level conduct. We concluded that "[a]n adequate record would have to be developed to separate what decisions qualify as *policy* from those that may have been only *operational* or *ministerial*." (Emphasis in original.) *Id.* at 200, 575 N.W.2d at 610. The difficulty in determining whether the discretionary function exception applies at the pleading stage is even more pronounced under our current notice pleading rules which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). In *Rohde v. Knoepfel*, 13 Neb. App. 383, 693 N.W.2d 564 (2005), the Court of Appeals determined that the granting of a rule 12(b)(6) motion was error because it could not be determined from the face of the complaint whether or not the discretionary function exception was applicable.

OPS argues that the discretionary function exception is triggered by Doe's allegation in his complaint that "pursuant to school policy allowing for students to be transferred rather than expelled after a finding of sexual misconduct," OPS permitted J.D. to attend the school where the alleged assault occurred. Without evidence concerning the policy and what actually transpired, we are unable to engage in the analysis outlined in *Aguallo v. City of Scottsbluff, supra*, to determine whether or not the discretionary function exception applies. Because it cannot be determined from Doe's complaint whether or not the discretionary function exception bars his claim, the affirmative defense cannot serve as a basis for dismissal under rule 12(b)(6).

### (c) § 13-910(1) Due Care Exception

The third basis for immunity asserted by OPS in its motion to dismiss is § 13-910(1), which provides that the PSTCA shall not apply to "[a]ny claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute, ordinance, or officially adopted resolution, rule, or regulation . . . ." Doe argues that this defense cannot bar his claim because he alleged that OPS failed to exercise due care. In the absence of a factual record, we cannot determine whether or not this affirmative defense has merit. Thus, it cannot serve as the basis for dismissal under rule 12(b)(6).

### V. CONCLUSION

For the reasons discussed, we conclude that this is not "the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Johnson v. Johnson*, 272 Neb. 263, 265, 720 N.W.2d 20, 23 (2006). Accord *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005). A factual record is necessary to resolve the issues raised by the complaint and the assertion of affirmative defenses by OPS. Accordingly, the district court erred in granting the motion to dismiss. We reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.