IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ADAMS BANK & TRUST V. BROWN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ADAMS BANK & TRUST, APPELLEE,

V.

CHARLES BROWN AND JUNE BROWN, APPELLANTS.


Filed October 17, 2017.    No. A-16-1065.


Appeal from the District Court for Lincoln County: DONALD E. ROWLANDS, Judge. Affirmed.

Robert B. Reynolds and Michael D. Samuelson, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellee.

Steve Windrum, of Malcom, Nelsen & Windrum, L.L.C, for appellants.


INBODY, PIRTLE, and RIEDMANN, Judges.

INBODY, Judge.

## I. INTRODUCTION

Charles Brown and June Brown (Appellants) appeal the district court's dismissal of nine of the theories of recovery listed in Appellants' counterclaim and the district court's final judgment entered in favor of Adams Bank & Trust (Adams Bank). For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

Adams Bank is a Nebraska banking corporation with its principal place of business located in Ogallala, Keith County, Nebraska. Appellants are husband and wife and have at all relevant times herein been residents of Nebraska.

- 1 -

In June 2005, Appellants executed a promissory note (Appellants' Note) with Adams Bank for $61,620.98 with a maturity date in June 2020. Under a section titled "collateral," Appellants' Note referenced a previous deed of trust stating: "I acknowledge this Note is secured by DEED OF TRUST DATED 5-6-98 AND FILED 5-15-98 IN BOOK 578 AT PAGE 722-727 IN LINCOLN COUNTY, NEBRASKA." In April 2006, Appellants' son and daughter-in-law, Travis and Tina Brown, executed a promissory note (Travis/Tina Note) with Adams Bank for $58,533.37 with a maturity date in January 2026. Under a section titled "collateral," the Travis/Tina Note referenced that it would be secured by an April 15, 2006, deed of trust.

The April 15, 2006, deed of trust (Travis/Tina Deed of Trust) was subsequently executed and recorded by Travis and Tina Brown and covered the following real estate:

Township 12 North, Range 27 West of the 6th P.M., Lincoln County, Nebraska

Section 4: That part of Lot 4 lying North of U.S. Highway #30, EXCEPT that portion thereof conveyed to the State of Nebraska by Deed recorded in Book 115, Page 451 and Except the Union Pacific Railroad Right of Way

(Hereinafter "32-acre tract.")

To further secure the Travis/Tina Note, Appellants executed and recorded a new deed of trust (Appellants' Deed of Trust) in favor of Adams Bank. Appellants' deed of trust covered both promissory notes and encompassed the following described real estate:

Lot 1, Rayburn Replat, Brady, Lincoln County, Nebraska. The real property or its address is commonly known as 316 N. Locust Street, Brady, NE 69123.

(Hereinafter "Brady property.")

Both deeds of trust contained identical language in the section titled "TAXES AND LIENS" obligating the trustor to pay any taxes on the property. Specifically, the "Payment" subsection stated, in relevant part:

Trustor shall pay when due (and in all events prior to delinquency) all taxes . . . levied against or on account of the Property[.] Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

Both deeds also provide Adams Bank the ability to protect its interests if the trustors failed to make their payments. The "LENDER'S EXPENDITURES" sections stated, in relevant part:

If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims . . . then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests.

Prior to 2010, Travis and Tina accumulated unpaid property tax on the 32-acre tract. Lincoln County thereafter brought the 32-acre tract to tax sale and a tax sale certificate was issued.

Vandelay Investments, LLC was subsequently issued a tax deed on the 32-acre tract. In August 2012, Travis and Tina filed for a Chapter 13 bankruptcy which was converted to Chapter 7 during the proceedings. They were granted a discharge in January 2015. During the course of the bankruptcy action, an accompanying adversarial action under a second bankruptcy case number was brought concerning the 32-acre tract raising the validity of Vandelay's tax deed which had been issued in November 2013. Among the named defendants to the adversarial action were Travis and Tina Brown and Adams Bank. The United States Bankruptcy Court for the District of Nebraska ultimately found for Vandelay and quieted title in the 32-acre tract "as against all named Defendants" on January 28, 2015.

On September 12, 2014, Adams Bank sent Appellants a letter to inform them that, on March 10, 2010, the 32-acre tract went to public tax sale and a tax certificate was issued. The letter went on to inform Appellants that the Travis/Tina Note had a past due balance and set forth the total required for a complete payoff of the loan. Specifically, the letter warned:

> Per the granted deed of trust, you have considerable interest and liability in this loan. Adams Bank & Trust is in process of attempting to resolve the issue [of the tax sale with the purchaser,] however, it is very important that we discuss this matter with you and make arrangements for payoff to be made by you on the past due loan.

Even after receiving this notice, neither Appellants nor any other party made payments on the Travis/Tina Note. On February 24, 2015, a notice of default was recorded with the Lincoln County Register of Deeds covering the Appellants' Brady property. Additionally, Appellants stopped making payments on their Note and Adams Bank accelerated the Appellants' loan. In June 2015, Adams Bank caused a foreclosure sale on the Brady property. Adams Bank was the highest bidder at the sale buying the Brady property for $95,000.

The following month, Adams Bank brought the instant action against Appellants seeking a monetary judgment for the difference between the amount owed on the loans and the $95,000 received from the foreclosure sale. Appellants contested Adams Bank's claim and counterclaimed alleging 11 separate theories of recovery.

Appellants' first theory of recovery asserted they had a right under the Travis/Tina Note to protect their offered security by paying any delinquent taxes or redeeming any tax sale certificates on the 32-acre tract. As such, Appellants alleged Adams Bank had a duty to take the ordinary, reasonable, and necessary action with respect to the property including paying the real estate taxes on the 32-acre tract or notifying the Appellants of the tax status of the 32-acre tract so that Appellants could protect their own interests by redeeming the tax sale certificate.

Appellants' second theory of recovery asserted Travis and/or Tina were told by Adams Bank representatives that as long as their payment was current for approximately one year after the date of initial indebtedness that Appellants would no longer be at risk of potential loss of the Brady property under their loan. Additionally, Appellants asserted Adams Bank representatives told Travis and/or Tina that the security interest of the 32-acre tract was sufficient to protect the Brady property. Appellants argued Adams Bank knew, or should have known, that Appellants' intention in securing of the Travis/Tina Note was limited to the principal of the promissory note and any interest thereon. Appellants alleged Adams Bank, even with such knowledge and

representations, included language in their deed of trust to extend the security to any and all of Travis and Tina's indebtedness. Therefore, Appellants claim Adams Bank's actions and omissions constituted fraud, constructive fraud, and inequitable conduct.

Among Appellants' additional theories of recovery, the third claimed unjust enrichment; the fourth claimed a fiduciary duty to protect Appellants' security property and breach thereof; the fifth claimed laches; the sixth claimed unconscionable conduct; the seventh claimed waiver; the eighth claimed failure to mitigate and avoidable consequences, and the ninth claimed failure to satisfy conditions precedent.

Appellants' tenth theory of recovery asserted Adams Bank breached the implied covenant of good faith and fair dealing in respect to the notes' contractual provisions.

Lastly, Appellants' eleventh theory of recovery asserted Adams Bank owed a duty of care to Appellants, that it breached such duty in the actions described in the first two claims, and that such breach was negligent and was a proximate and factual cause to the damages suffered by Appellants in their loss of the Brady property and remaining amount Adams Bank claimed was owed by them.

Adams Bank filed a motion to dismiss Appellants' counterclaim under Neb. Ct. R. § 6-1112(b)(6) alleging failure to state claims upon which relief could be granted. The district court determined "[Adams Bank] had the right under the Deed of Trust but not the duty, to pay the real estate taxes to redeem the tax sale certificate on the Thirty-Two (32) acre tract." Accordingly, the court partially granted Adams Bank's motion to dismiss by dismissing "[a]ny defense or counterclaim raised by [Appellants] which is premised upon that non-existent duty," namely theories of recovery one, three through nine, and eleven. Thereafter, the case proceeded to bench trial on Adams Bank's claim and Appellants' counterclaims under theories of recovery two and ten.

After the trial, the district court found "[g]enerally in favor of [Adams Bank] and against the [Appellants]." The district court found Neb. Rev. Stat. § 76-1013 (Reissue 2009) applicable and that it provides:

> [A]t any time within three months after any sale of property under a trust deed, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security. Before rendering judgment, the court shall find the fair market value at the date of the sale of the property sold. The court shall not render judgment for more than the amount by which the amount of indebtedness with interest and the costs and expense of sale, including trustee's fees, exceeds that fair market value of the property.

The district court then determined Appellants' Brady property sold for $95,000, but that the entire amount of indebtedness which was secured by the Appellants' deed of trust on the date of sale was $114,862.04 with the costs and expenses of exercising the power of sale amounting to $628.15 plus attorney fees. The district court determined that the $95,000 was the fair market value and that the costs incurred in the exercising of the power of sale and attorney fees were "fair, reasonable, and necessary." Therefore, the district court entered judgment in favor of Adams Bank against Appellants, jointly and severally, for $23,175.07 as of July 24, 2015, plus interest at the

rate of $13.51 per day thereafter. The court dismissed Appellants' remaining theories of recovery. Appellants have now appealed.

## III. ASSIGNMENTS OF ERROR

Appellants' first grouping of assignments of error, restated, relate to the claims that the district court erred by partially granting Adams Bank's motion to dismiss. Specifically, Appellants contend the district court erred in (1) finding that there was no duty to protect Appellants' Brady property and partially dismissing the counterclaim; (2) dismissing "any defense . . . premised upon that non-existent duty" because no predicate motion or other pleading was brought concerning Appellants' defenses; and (3) not providing Appellants the opportunity to amend their pleadings.

Next, Appellants assign, restated, that the district court erred by overruling various objections to evidence received at the trial. Specifically, Appellants challenge the receipt of Exhibits 35 and 28 and certain questioning in the testimony of Cynthia McVay.

Finally, Appellants' assignments of error, restated, contend that, following the bench trial, the district court erred by finding generally in favor of Adams Bank and against the Appellants. Specifically, Appellants contend the district court erred in finding (1) that there was sufficient evidence to find in favor of Adams Bank on its claim; (2) that Appellants failed to meet their burden of proof on their remaining theories of recovery; and (3) that Adams Bank was entitled to attorney fees for which Appellants would be liable and that the attorney fees incurred were fair, reasonable, and necessary.

## IV. STANDARD OF REVIEW

Appellants challenge the district court's ruling on Adams Bank's motion to dismiss, the district court's ruling on evidentiary objections and receipt of evidence during the trial, and the district court's disposition after the bench trial.

On the appeal from the district court's ruling on Adams Bank's motion to dismiss, an appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. *Doe v. Omaha Pub. Sch. Dist.,* 273 Neb. 79, 727 N.W.2d 447 (2007). Because a motion pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) tests the legal sufficiency of the complaint, not the claim's substantive merits, a court may typically look only at the face of the complaint to decide a motion to dismiss. *Id.* Dismissal under rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Id.* When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Id.* Complaints should be liberally construed in the pleading party's favor, and a complaint should not be dismissed merely because it does not state with precision all elements that give rise to a legal basis for recovery. *Ferer v. Erickson, Sederstrom,* 272 Neb. 113, 718 N.W.2d 501 (2006).

On Appellants' appeal concerning the district court's evidentiary rulings, the admissibility of evidence is controlled by the Nebraska Evidence Rules. *Green Tree Fin. Servicing v. Sutton*, 264 Neb. 533, 650 N.W.2d 228 (2002). Judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Id.* A trial court has the discretion to

determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002).

On the appeal challenging the district court's disposition to the claims considered at the bench trial, we find the nature of the action is one in law. See *White v. Medico Life Ins. Co.*, 212 Neb. 901, 902, 327 N.W.2d 606, 608 (1982) (explaining that "whether the nature of an action is legal or equitable is to be determined from its main object, as disclosed by the averments of the pleadings and relief sought"). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Donut Holdings v. Risberg*, 294 Neb. 861, 885 N.W.2d 670 (2016). An appellate court independently reviews questions of law decided by a lower court. *Id.* The meaning of a contract and whether a contract is ambiguous are questions of law. *Facilities Cost v. Otoe County School*, 291 Neb. 642, 868 N.W.2d 67 (2015). The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide. *Gonzalez v. Union Pac. R.R. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

## V. ANALYSIS

As noted above, Appellants contend the district court erred at three stages of the underlying proceedings. First, Appellants claim the district court erred in granting Adams Bank's motion and dismissing Appellants' theories of recovery one, three through nine, and eleven. Second, Appellants contend the district court erred in overruling Appellants' objections to the receipt of Exhibits 35 and 28 and certain questioning in the testimony of Cynthia McVay. Finally, following the bench trial, Appellants claim the district court erred in granting judgment for Adams Bank and against Appellants under Adams Banks' claim and Appellants' theories of recovery two and ten.

### 1. RULING ON MOTION TO DISMISS

Appellants contend the district court erred in finding Adams Bank had no duty to protect Appellants' Brady property and dismissing the majority of their counterclaims. Additionally, Appellants assert the district court incorrectly dismissed "any defense . . . premised upon that non-existent duty" because no predicate motion or other pleading was brought concerning Appellants' defenses. Finally, Appellants claim the district court erred in not providing them the opportunity to amend their pleadings.

### (a) Duty to Protect Security

Appellants make and repeat several arguments attacking the district court's dismissal of their theories of recovery based upon its finding that Adams Bank "had the right under the Deed of Trust but not the duty, to pay the real estate taxes to redeem the tax sale certificate" on the 32-acre tract. First, Appellants argue that, as the only listed justification for dismissal of nine of their counterclaims, such reasoning does not address the full breadth of what Appellants claimed to be Adams Bank's duty under the promissory note and deeds of trust--namely, that Adams Bank

had the duty to "either make payment of the real estate taxes . . . or to notify the [Appellants] of relevant information with respect to the status of such taxes, and their delinquency." However, the district court was not required to explicitly outline all of its analysis in dismissing Appellants' counterclaims. It was sufficient the district court dismissed the counterclaims after Appellants' pleadings asserted such a duty existed. Reading the ruling in context to the parties' pleadings and the motion to dismiss, the finding that Adams Bank had the right but not the duty to pay the delinquent taxes was properly extended to notifying other parties to pay it.

Second, Appellants argue that the promissory note, deeds of trust, and legal principles provide that Adams Bank had a duty to protect Appellants' offered security. Appellants first cite related authority on mortgages, sureties, and marshalling securities to support their theory that any duty to protect a secondary security property by extracting the maximum value of a primary security property is enhanced when the secondary security property is offered by a party who is not a co-obligor, surety, or guarantor. However, even though Appellants assert otherwise in their reply brief, Appellants offer no specific Nebraska authority that would require a creditor to expend funds to maximize value from a security when a secondary security exists.

Additionally, the terms of the deeds of trust and Travis/Tina Note do not impose a duty on Adams Bank to pay delinquent taxes on the 32-acre tract to protect Appellants' Brady property. Specifically, the Travis/Tina Deed of Trust provides:

> Trustor shall pay when due (and in all events prior to delinquency) all taxes . . . levied against or on account of the Property[.] Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust. . . .
>
> If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims . . . then Lender *may do so*. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf *may, but is not required to,* take any action that Lender believes to be appropriate to protect Lender's interests.

(Emphasis supplied.) In this quoted section, the Travis/Tina Deed of Trust--which provides the rights and obligations of Adams Bank and Travis and Tina Brown dealing with the 32-acre tract--only states that Adams Bank "may" exercise a right to pay any delinquent taxes on the 32-acre tract. It does not state Adams Bank is required to do so. Moreover, if such delinquent taxes resulted in an action that would negatively affect Adams Bank's interest in the 32-acre tract, Adams Bank was again permitted, but not required to, intervene to protect its interests. In fact, Adams Bank attempted to protect its interests by participating in the adversarial action challenging Vandelay's rights as the tax deed holder to the 32-acre tract. Under the Travis/Tina Deed of Trust, Adams Bank was not required to pay delinquent taxes nor was it required to intervene in court actions that might negatively affect its interests, but it did have the right to do so. Just because Adams Bank chose to exercise one of these rights, it was not then required to exercise both. The Travis/Tina Deed of Trust does not reference a duty for Adams Bank to notify Appellants of any delinquent taxes, and the Travis/Tina Note and the Appellants' Deed of Trust do not state any

additional rights or duties of Adams Bank regarding the payment of delinquent taxes. Therefore, the district court did not err in finding Adams Bank "had the right under the [Travis/Tina] Deed of Trust but not the duty, to pay the real estate taxes to redeem the tax sale certificate."

(b) Dismissal of Affirmative Defenses

Appellants next contend the district court incorrectly dismissed "any defense . . . premised upon that non-existent duty" because no predicate motion or other pleading was brought concerning Appellants' defenses. Specifically, Appellants claim the district court's ruling dismissed its affirmative defenses listed in paragraphs 16 through 41 of their answer.

When read in context, the dismissal of "any defense" is limited. Specifically, the court's order provides:

1. Plaintiff had the right under the Deed of Trust but not the duty, to pay the real estate taxes to redeem the tax sale certificate on the Thirty-Two (32) acre tract. Any defense or counterclaim raised by Defendants which is premised upon that non-existent duty should be stricken from the pleadings;

2. Accordingly, the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, and 11th Theories of Recovery set forth in the Defendants' Counterclaim are dismissed.

Among the theories of recovery dismissed in the order, the fifth claimed laches, the seventh claimed waiver, the eighth claimed failure to mitigate and avoidable consequences, and the ninth claimed failure to satisfy conditions precedent. Although these were included in Appellants' counterclaims, these are defenses. See *Vanice v. Oehm*, 255 Neb. 166, 582 N.W.2d 615 (1998) (stating that a claim of laches is a defense which asserts "circumstances have changed such that the assertion of rights by the plaintiff would prejudice the adverse party"); *Omaha Police Union Local 101, IUPA, AFL-CIO v. City of Omaha*, 292 Neb. 381, 872 N.W.2d 765 (2015) (explaining that waiver is a defense to a plaintiff's claim when there has been "a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right"); *Borley Storage & Transfer Co. v. Whitted*, 271 Neb. 84, 95, 710 N.W.2d 71, 80 (2006) (explaining that the doctrine of avoidable consequences is another name for the failure to mitigate damages and is a defense wherein "a wronged party will be denied recovery for such losses as could reasonably have been avoided"); *Weeder v. Cent. Cmty. Coll.*, 269 Neb. 114, 121, 691 N.W.2d 508, 514 (2005) (detailing that noncompliance with a condition precedent is an affirmative defense). When the language of the first paragraph is read with the explanatory second paragraph, the language of the court's order is a dismissal of all the listed theories of recovery resting on the offered duty including those that were separate causes of action and those that were responsive defenses.

As stated above, the district court appropriately found that Adams Bank did not have a duty to pay the 32-acre tract property tax. Pursuant to such a finding, any defense premised on that duty would have inevitably failed. Therefore, the district court did not err in its dismissal of "any defense . . . premised upon that non-existent duty."

(c) Failure to Direct Appellants to Amend Their Pleadings

Finally, Appellants argue the district court, after submitting its ruling on Adams Bank's motion to dismiss, should have allowed it to amend its pleadings to comply with the court's ruling. However, the district court was not required to suggest Appellants amend their pleadings let alone unilaterally direct Appellants to amend their theories of recovery. In fact, to do so would have crossed the line into advocacy. See *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010) (explaining that a "judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. A judge must be careful not to appear to act in the dual capacity of judge and advocate.")

Appellants made no written or oral motion to amend. If Appellants believed they could amend their pleadings to comply with the district court's ruling, they should have submitted such a motion to the court. Therefore, the district court did not err in failing to unilaterally direct Appellants to amend their pleadings.

### 2. OVERRULING OF APPELLANTS' EVIDENTIARY MOTIONS

Appellants also claim the district court erred in receiving certain evidence over their objections. Specifically, Appellants challenge the receipt of Exhibits 28 and 35 and certain questioning during Cynthia McVay's testimony.

Exhibit 28 was offered as a loan history for Travis and Tina which reflects all debits and credits associated with the Travis/Tina Note. Appellants objected to Exhibit 28 because of certain information contained within concerning attorney fees. Specifically, Appellants' trial counsel stated:

> I'm going to object to Exhibit 28, Your Honor, on the basis that Exhibit 28, as the Court will note when it reviews it, has a number of entries in it which purport to have charges to a law firm of--the Reynolds Law Firm that relate to this transaction.
>
> And I can advise the Court somewhat preemptively that there is no other documentation that I am aware of and that has been provided in respect to an ominous discovery request for any and all documents that directly or indirectly relate to the claims in the Plaintiff's Complaint that would have to do with any attorneys fee that may be related to any of these transactions at all. All we've got is a single line entry of seven or eight charges that show up on Exhibit 28.
>
> And that's the extent of any documentation that relate to these. And by reason of the insufficiency of any of the documentation or supporting documents that relate to these it's my position that the exhibit is incompetent and irrelevant and immaterial.

The district court overruled this objection stating "Overruled. I'll receive Exhibit 28, but whether I'll back out the attorneys fees from the eventual determination in the case, I'll make that determination after I take the matter under advisement."

Similarly, Exhibit 35 was offered as a loan history for Appellants which reflects all debits and credits associated with the Appellants' Note. Appellants also objected to this exhibit and the district court overruled it by the following exchange:

[APPELLANTS' TRIAL COUNSEL]: Same objection as was made to Exhibit 28 by reason of Exhibit 35 also having some entries in it which show a charge and apparently a payment to the Reynolds Law Firm that, as I explained previously in the previous objections, to adopt those reasons and that it is incompetent, irrelevant, and immaterial.

THE COURT: I'll overrule the objection. But, again, what costs, if any, relate to the foreclosures that might be included in any eventual judgments against the Defendants would have to be determined after I take the matter under advisement.

When reviewing the admission of evidence, we begin by noting "[a] trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of discretion." *Green Tree Fin. Servicing v. Sutton*, 264 Neb. 533, 538, 650 N.W.2d 228, 233 (2002). A party bringing an objection must state the specific ground of the objection or ensure that such specific ground was apparent from the context. Should such specific objection not be stated or otherwise apparent, the overruling of the objection is not reviewable on appeal. Neb. Rev. Stat. § 27-103(1)(a) (Reissue 2008). A party may not assert a different ground for an objection to the admission of evidence than was offered to the trial court. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

Here, Appellants objected to the information contained within exhibits 28 and 35 concerning attorney fees claiming this offered evidence was incompetent, irrelevant, and immaterial. Adams Bank, through testimony by Cynthia McVay, provided sufficient foundation and explanation of what the documents were, where they came from, and their relevancy to this case. Moreover, in overruling the objections, the district court noted it reserved the right to later determine whether or not to "back out the attorneys fees from the eventual determination in the case" after considering the sufficiency of the evidence in relation to the claims asserted. Taking into account the considerable deference the district court has on the determination of the relevancy and materiality of evidence and the court's ability to weigh the evidence and its sufficiency, the district court did not err in overruling Appellants' objections to exhibits 28 and 35.

During the bench trial, Appellants also objected to a question by Adams Bank during Cynthia McVay's testimony. Specifically, Adams Bank asked: "There's likewise a statement in the Complaint that the entire amount of indebtedness secured by Charles and June Brown's deed of trust on date of sale is $114,862.04. Is that a fair statement?" Appellants objected to this question stating "lack of foundation." However, the district court overruled the objection stating "Overruled, I'll permit it. But then you can go into how that number was calculated, Mr. Windrum, on cross-examination. You may answer."

Again, considering the district court's discretion and the testimony proceeding and following the objected to question, the district court did not err in overruling Appellants' objection to the questioning of Cynthia McVay.

### 3. BENCH TRIAL

Appellants contend the district court erred by finding generally in favor of Adams Bank and against the Appellants. Specifically, Appellants contend the district court erred in finding (1) there was sufficient evidence to find in favor of Adams Bank on its claim; (2) Appellants failed to

meet their burden of proof on their remaining theories of recovery; and (3) Adams Bank was entitled to attorney fees and that the attorney fees incurred were fair, reasonable, and necessary.

(a) Adams Bank's Deficiency Judgment

Appellants challenge the district court's determination that Adams Bank provided sufficient evidence that Adams Bank was entitled to a judgment on its deficiency claim.

The district court received the promissory notes, the deeds of trust, past due notices, loan histories, notices of default, a loan payoff statement, testimony from Adams Bank representatives Cynthia McVay and Chad Adams, and testimony from June and Tina. The evidence presented clearly outlined that Appellants stopped paying on the Appellants' Note and never paid on the Travis/Tina Note. It is also clear that Adams Bank foreclosed on the Appellants' Brady property seeking payment of the Notes. Further, the district court's order found that, regarding Adams Bank's complaint against the Appellants, § 76-1013 provides, "in pertinent part, that 'at any time within three months after any sale of property under a trust deed, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security.'"

The Appellants' Deed of Trust outlines the debt which it provided security for, specifically stating:

> CROSS-COLLATERALIZATION. In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Trustor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Trustor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Trustor may be liable individually or jointly with others.

The term "Note" is further explained as:

> The [Travis/Tina Note] dated April 14, 2006, in the original principal amount of $58,533.57 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement[.]"

Appellants' Note was also protected in the Appellants' Deed of Trust in the language incorporating all "obligations, debts and liabilities."

The order under which funds from a foreclosure apply to the secured debts is explained under the Appellants' Deed of Trust under the section titled "Foreclosure by Power of Sale" which states:

> (b) As may be permitted by law, after deducting all costs, fees and expenses of Trustee and of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of (i) all sums expended under the terms of this Deed of Trust or under the terms of the Note not then repaid, including but

not limited to accrued interest and late charges, (ii) all other sums then secured hereby, and (iii) the remainder, if any, to the person or persons legally entitled thereto.

Here, the term "Note" again may be read as the Travis/Tina Note and "all other sums then secured hereby" includes Appellants' Note.

Appellants' claim that they should not be held personally liable for the Travis/Tina Note is without merit. According to the language from Appellants' Deed of Trust quoted above, after Appellants' Brady property was sold at the foreclosure sale, the Travis/Tina Note was to be paid first, any other obligations were to be paid second, and the remainder was to go to any other persons legally entitled thereto. Thus, the Travis/Tina Note was paid off through the $95,000 gained through the foreclosure sale and then the rest of the proceeds went to the Appellants' Note leaving a remaining balance on that note. Because Appellants were parties of the Appellants' Note, they remained personally liable for any remaining balance on their Note.

Appellants also claim the district court erred in finding the fair market value of the Brady property was $95,000. On June 16, 2015, Adams Bank caused a foreclosure sale on the Appellants' Brady property; Adams Bank bought the property at the sale for $95,000 as the highest bidder. Four months later, after some renovation to the property and the payment of unpaid property taxes, Adams Bank resold the Brady property for $110,000. Appellants claim the property should have, therefore, been valued at the $110,000 price.

During trial, the district court received testimony from Adams Bank representatives of the process involved in foreclosing on the Appellants' Brady property, valuing of the property, and the ultimate purchase of the property as the highest bidder. There was also testimony about work performed on the property prior to its eventual resale and the payment of unpaid property taxes. Although Adams Bank did not use an independent appraiser, it was not required to do so. Adams Bank bought the property in a foreclosure sale that was open to other bids. The fact that it was subsequently sold months later for a higher price after work was put into it is not conclusive of an incorrect initial valuation. Based upon all of the foregoing, the district court had sufficient evidence to find $95,000 was the fair market value of the property at the time of foreclosure sale.

The district court additionally received testimony from Adams Bank representatives, the deeds of trust and promissory notes, credit statements, and other evidence describing the amount owed on the promissory notes after the foreclosure sale. Specifically, that the total indebtedness secured by Appellants' Deed of Trust on the date of sale of $114,862.04. Its determination that Adams Bank is owed a deficiency judgment in the amount of $23,175.07 plus interest at the rate of $13.51 per day was not clearly wrong and is therefore not in error.

### (b) Appellants' Theories of Recovery Two and Ten

Appellants' second theory of recovery claimed fraud, constructive fraud, and inequitable conduct. To support this claim, Appellants assert Travis and/or Tina were told by representatives of Adams Bank that as long as they were current in their payments for approximately one year after the date of initial indebtedness that Appellants would no longer be at risk of potential loss of the Appellants' Brady property under their loan. Additionally, Appellants asserted Adams Bank

representatives told Travis and/or Tina that the security interest of the 32-acre tract was sufficient to protect Appellants' Brady property.

During trial, Tina and June Brown testified to these alleged representations by Adams Bank. However, this testimony was lacking in specifics on the details of the alleged conversations. Adams Bank additionally denies such conversations took place. Therefore, the disposition of Appellants' second theory of recovery rests on a credibility determination by the district court. The district court's decision was not clearly wrong and its factual determination on credibility should not be disturbed.

Appellants also challenge the district court's alternative reason for finding Appellants failed to meet their burden to show such amendments were made to the Appellants' Deed of Trust. Specifically, the appellants argue that Neb. Rev. Stat. § 45-1,113 (Reissue 2010) requires that any such agreements would have to have been in writing to be enforceable. Section 45-1,113(1) provides:

> A debtor or a creditor may not maintain an action or assert a defense in an action based on a credit agreement unless the credit agreement is in writing, expresses consideration, sets forth the relevant terms and conditions of the credit agreement, and is signed by the creditor and the debtor.

Neb. Rev. Stat. § 45-1,112 (Reissue 2010) defines a credit agreement to be:

> (1)(a) Credit agreement means:
> (i) A contract, promise, undertaking, offer, or commitment to loan money or to grant or extend credit; or
> (ii) A contract, promise, undertaking, or offer to forebear repayment of money or to make any other financial accommodation in connection with a loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with a loan of money or grant or extension of credit, except for loans of money or grants or extensions of credit which are:
> (A) Not in excess of twenty-five thousand dollars and used primarily for personal, family, or household purposes of the debtor or debtors; or
> (B) Used for the purchase of and secured solely by the principal residence of the debtor or debtors.
> (b) Credit agreement does not include (i) letters of credit or (ii) promissory notes, real estate mortgages, trust deeds, security agreements, financing statements, guarantee agreements, pledge agreements, or other similar documents or instruments evidencing an obligation to repay indebtedness or securing the repayment of indebtedness

Appellants argue that § 45-1,112(b) specifically exempting "promissory notes" and "trust deeds" from the credit agreement means § 45-1,113 is not applicable to the instant case. However, because we have determined that the district court did not err in finding the testimony offered concerning the alleged conversations to modify the agreement was not credible, we do not need to address whether § 45-1,113 applies. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994)

(explaining that an appellate court is not obligated to engage in analysis which is not necessary to adjudicate the case and controversy before it).

Appellants also claim the district court erred in finding that they failed to meet their burden on their tenth theory of recovery which claimed Adams Bank breached the implied covenant of good faith and fair dealing regarding the notes' contractual provisions. Because the district court did not err in finding that Appellants' offered testimony was not credible and that Appellants did not meet their burden to show there was a modification of Appellants' Deed of Trust or the Travis/Tina Note as analyzed above, the district court did not err in finding there was no modified contract for Adams Bank to breach the implied covenant of good faith and fair dealing. Therefore, the district court did not err in finding Appellants failed to meet their burden on their tenth theory of recovery.

### (c) Award of Attorney Fees

Appellants challenge the district court's award of attorney fees to Adams Bank. They primarily argue Adams Bank did not provide a sufficient evidentiary basis for the determination of those fees.

Under sections titled "ATTORNEYS' FEES; EXPENSES," the Travis/Tina Note and Appellants' Note provide:

> Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals if not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

The Travis/Tina Deed of Trust further provides:

> LENDERS EXPENDITURES. If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on

account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

See, also, Appellants' Deed of Trust (containing an almost identical provision with only the addition to subsection (C) stating ". . . (C) to make repairs to the Property *or to comply with any obligation to maintain existing indebtedness in good standing as required below* then Lender may do so . . .") (emphasis added).

During trial, the district court received Exhibits 28 and 35, which are loan histories under the Travis/Tina Note and the Appellants' Note, respectively. These exhibits list several payments made to "Reynolds Korth and Samuelson PC." From testimony during the testimony of Cynthia McVay and Chad Adams, it was revealed that these listings indicate payments made by Adams Bank to the Reynolds law firm for efforts related to collections on the amount owed including "several bankruptcies, litigation over taxes, and many, many legal matters involving these [notes] over the years." However, because it is Adams Bank's policy to discard invoices after they are paid, Adams Bank presented no specific evidence on what these payments were for.

The district court found "that the attorneys' fees incurred by [Adams Bank] were fair, reasonable, and necessary, based upon the testimony of Mr. Adams who is also a licensed attorney, in addition to his position as president of [Adams Bank]." The court received evidence regarding the amount of the fees, testimony from representatives of Adams Bank on how those fees were determined generally, and explanation on the events which would have required expending such attorney fees. Therefore, the district court did not err in determining Adams Bank was entitled to attorney fees for the collection efforts under the two notes.

## VI. CONCLUSION

We conclude the district court did not err (1) in dismissing Appellants' counterclaim theories of recovery one, three through nine, and eleven; (2) finding Adams Bank is entitled to a deficiency judgment of $23,175.07 plus interest at the rate of $13.51 per day; (3) finding Appellants did not meet their burdens under counterclaim theories of recovery two and ten; (4) finding Adams Bank is entitled to attorney fees for collection under the notes; and (5) overruling Appellants' objections to exhibits 28 and 35 and certain questioning during Cynthia McVay's testimony.

AFFIRMED.