Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/05/2025 09:09 AM CDT

- 823 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

Tammi Larsen, as natural parent and legal guardian
of Ryan Larsen, a minor child, appellant, v.
Sarpy County School District No. 77-0027, doing
business as Papillion La Vista Community School
District, and Jane Does 1-3, appellees.

___ N.W.3d ___

Filed September 5, 2025.    No. S-24-384.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Political Subdivisions Tort Claims Act: Appeal and Error.** Whether the allegations in a complaint constitute a cause of action under the Political Subdivisions Tort Claims Act, and whether the allegations set forth claims which are precluded by an exemption under the act, present questions of law for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

3. **Motions to Dismiss: Jurisdiction: Rules of the Supreme Court.** When dismissal of a complaint is requested under both Neb. Ct. R. Pldg. § 6-1112(b)(1) (codified in 2008) for lack of subject matter jurisdiction and Neb. Ct. R. Pldg. § 6-1112(b)(6) (codified in 2008) for failure to state a claim, courts must consider § 6-1112(b)(1) grounds first to assess jurisdiction, and consider § 6-1112(b)(6) grounds only if the court determines it has subject matter jurisdiction.

4. **Immunity: Constitutional Law: Political Subdivisions.** The sovereign immunity of the State and its political subdivisions is grounded in Neb. Const. art. V, § 22, which provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought."

- 824 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

5. **Immunity: Constitutional Law: Political Subdivisions: Legislature.** Neb. Const. art. V, § 22, is not self-executing, and no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided.

6. **Political Subdivisions Tort Claims Act: Legislature: Schools and School Districts.** The Legislature has enacted the Political Subdivisions Tort Claims Act to govern tort claims against political subdivisions, and public school districts are political subdivisions for purposes of the act.

7. **Political Subdivisions Tort Claims Act: Liability.** Under the Political Subdivisions Tort Claims Act, a political subdivision has no liability for the torts of its officers, agents, or employees, except to the extent, and only to the extent, provided by the act.

8. **Political Subdivisions Tort Claims Act: Immunity: Waiver: Legislature.** Through the Political Subdivisions Tort Claims Act, the Legislature has allowed a limited waiver of a political subdivision's sovereign immunity with respect to some, but not all, types of tort claims.

9. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act expressly exempts certain types of tort claims from the limited waiver of sovereign immunity. The exemptions in Neb. Rev. Stat. § 13-910 (Reissue 2022) describe the types of tort claims for which a political subdivision has not consented to be sued.

10. **Political Subdivisions Tort Claims Act: Immunity: Dismissal and Nonsuit.** When an exemption under the Political Subdivisions Tort Claims Act applies, the political subdivision is immune from the claim and the proper remedy is to dismiss it for lack of subject matter jurisdiction.

11. **Political Subdivisions Tort Claims Act.** The purpose of the discretionary function exemption of the Political Subdivisions Tort Claims Act is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

12. ____. The discretionary function exemption of the Political Subdivisions Tort Claims Act extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions.

13. ____. It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exemption of the Political Subdivisions Tort Claims Act applies in a given case.

- 825 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

14. ____. A two-part analysis determines whether the discretionary function exemption of the Political Subdivisions Tort Claims Act applies. First, the court must consider whether the action is a matter of choice for the acting political subdivision or employee. Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exemption was designed to shield. Both parts of the analysis must be met for the exemption to apply.

15. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. In cases where a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.

16. **Actions: Pleadings: Notice.** Because Nebraska is a notice pleading jurisdiction, a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief; a party is not required to plead legal theories or to cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.

17. **Actions: Mental Distress.** An emotional distress claim is not a cause of action, but, rather, a separate theory of recovery or element of damage.

18. **Mental Distress: Negligence: Proof.** Generally, for a plaintiff in Nebraska to recover for negligent infliction of emotional distress as a bystander, there must be evidence establishing (1) a seriously injured victim as the result of the proven negligence of the defendant, (2) an intimate familial relationship between the victim and plaintiff, and (3) emotional distress suffered by the plaintiff that is medically diagnosable and so severe that no person could be expected to endure it.

19. **Evidence: Records: Judicial Notice.** The mere taking of judicial notice does not circumvent the necessity of presenting evidence in a bill of exceptions.

20. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made part of the bill of exceptions may not be considered.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Reversed and remanded for further proceedings.

- 826 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

Justin W. Pritchett and Michael B. Duffy, of Fraser Stryker, P.C., L.L.O., and Sean M. Conway, of Chandler | Conway, P.C., L.L.O., for appellant.

Charles E. Wilbrand, Robert J. Drust III, Thomas Joseph Helget, and Anthony M. Budell, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellees.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Stacy, J.

In 2021, 11-year-old Ryan Larsen, a child with special needs, was left unattended and walked out of his public elementary school. He was never seen again. In 2023, Ryan's mother, Tammi Larsen (Larsen), filed this negligence action against the school district and staff pursuant to the Political Subdivisions Tort Claims Act (PSTCA),[1] alleging that Ryan's disappearance was a result of the defendants' negligent supervision. The defendants moved to dismiss the complaint, asserting that the court lacked subject matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted. The court granted the motion and dismissed the complaint, and Larsen appeals. We reverse the dismissal and remand the cause for further proceedings.

## I. BACKGROUND

Because this appeal is from an order granting a motion to dismiss the complaint, the factual record is limited to the well-pled facts alleged in the complaint, which at this stage of the proceeding we accept as true, drawing all reasonable inferences therefrom in favor of the nonmoving party.[2]

---

[1] Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2022).

[2] See *Nieveen v. TAX 106*, 317 Neb. 425, 430, 10 N.W.3d 365, 369-70 (2024) ("[w]hen reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion").

- 827 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

According to the complaint, Ryan was born in June 2009 and began attending La Vista West Elementary School in 2014. Ryan was diagnosed with autism spectrum disorder, "Tourette's disorder," and "absence seizures." He had substantially delayed learning, social, and communication skills. He struggled to tell adults his needs and to express his thoughts. Ryan was unable to care for himself: he could not regulate proper eating and drinking, he was unable to identify and avoid dangerous situations, and he was unable to swim. Ryan was incapable of making rational choices, and his behavior was impulsive.

The school district and the staff at La Vista West Elementary School had firsthand knowledge of Ryan's disabilities and were aware of his special needs. They knew that Ryan needed to be supervised at all times and that he had a documented history of leaving or attempting to leave school grounds. Because of his disabilities, Ryan was under an individualized education plan (IEP) that was regularly updated and modified by a team of professionals employed by the school district. The IEP was not attached to Larsen's complaint, nor were its provisions described in the complaint.

In the weeks and months before Ryan's disappearance, the school district staff was aware of three separate occasions when Ryan walked out of the school building and off school grounds when he was left alone and unsupervised. This occurred on January 16, April 28, and May 10, 2021.

On May 17, 2021, school district staff again left Ryan alone and unsupervised in a classroom. "Jane Does 1-3," all school district employees, watched as Ryan walked out of the school building in the middle of the day, unattended. School district staff did not attempt to prevent Ryan from leaving the school grounds and made no immediate attempts to retrieve him and return him to school.

Ryan has not been seen since he left the school on May 17, 2021. Law enforcement agencies have searched extensively

- 828 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

but have not discovered evidence of Ryan's whereabouts, although cadaver dogs have alerted to human remains at a lake in a recreation area near the school. Larsen's complaint alleges it is "more likely than not" that Ryan died following his disappearance. Despite search and recovery efforts, Ryan's body has not been recovered.

## 1. Complaint

On November 28, 2023, Larsen filed this PSTCA action in the district court for Sarpy County both in her individual capacity and as the natural parent and legal guardian of Ryan. The complaint named as defendants Sarpy County School District No. 77-0027, doing business as Papillion La Vista Community School District, and school district employees identified as "Jane Does 1-3." For simplicity, this opinion will refer to the defendants collectively as "the school district."

In addition to the facts summarized above, the complaint generally alleged that before Larsen filed suit, she complied with the claim presentment requirements of the PSTCA, and that she withdrew the claim after no action had been taken for more than 6 months.[3] The substance of Larsen's complaint was styled as two causes of action: one titled "Negligent Supervision" and the other titled "Negligent Infliction of Emotional Distress."

Regarding the claim of negligent supervision, the complaint incorporated all the facts summarized above and alleged:
• The school district had a duty to protect and supervise the children entrusted to its care and custody;[4]
• The school district breached that duty, and the applicable standard of care, by (a) leaving Ryan alone and unsupervised when it knew of his disability and propensity to wander off

---

[3] See § 13-905.

[4] See *MacFarlane v. Sarpy Cty. School Dist. 77-0037*, 316 Neb. 705, 713, 6 N.W.3d 527, 535 (2024) (recognizing that "schools owe their students a duty of reasonable care" and that instructors "generally have a legal duty to supervise students in a nonnegligent manner").

- 829 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

when left alone and when it was foreseeable that he would do so again if left alone and (b) watching as Ryan walked out of the school unaccompanied and doing nothing;

• Ryan's disappearance was directly and proximately caused by the school district's negligence; and

• As a result of the school district's negligence, Ryan and Larsen each suffered physical injury and trauma, mental and emotional distress, and loss of companionship.

Regarding the claim of negligent infliction of emotional distress, the complaint incorporated all the facts summarized above and alleged:

• Given the school district's knowledge of Ryan's age, disability, and history of elopement, it was reckless, outrageous, and intolerable to leave him alone and to permit him to leave the school building unattended;

• The negligence of the school district "goes beyond all possible bounds of decency," led directly to Ryan's likely death or serious physical harm, and caused Larsen to suffer severe emotional distress for which she "must now be treated"; and

• No reasonable person should be expected "to endure the trauma of wondering what horrors have befallen" the person's disabled child, who was knowingly allowed to wander off alone.

The complaint prayed for general and special damages on behalf of both Larsen and Ryan, as well as attorney fees and costs.

## 2. MOTION TO DISMISS AND HEARING

The school district moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) (codified in 2008) (Rule 12(b)(1)), asserting Larsen's claims fell within the PSTCA's due care exemption in § 13-910(1) and/or the discretionary function exemption in § 13-910(2). Alternatively, the school district moved to dismiss the complaint for failure to state a claim

- 830 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

pursuant to § 6-1112(b)(6) (Rule 12(b)(6)), asserting that Larsen's claim of negligent infliction of emotional distress failed to state a claim upon which relief could be granted.

No evidence was adduced at the hearing on the motion to dismiss, but the parties generally agree that the court was asked to take judicial notice of a Sarpy County probate case in which Larsen petitioned for a declaration of death based on Ryan's disappearance and unexplained absence.[5] Although the court agreed to take judicial notice of the probate proceeding, no exhibit relating to any probate proceeding was identified, marked, received, or otherwise made part of the appellate record in this case.[6]

### 3. Order of Dismissal

In a written order entered May 15, 2024, the district court granted the school district's motion to dismiss in its entirety. It determined that Larsen's negligent supervision claim fell within both the due care exemption in § 13-910(1) and the discretionary function exemption in § 13-910(2) and consequently concluded the school district had not waived its sovereign immunity for that claim under the PSTCA. The court thus dismissed the negligent supervision claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The court also dismissed Larsen's claim for negligent infliction of emotion distress. It determined that claim was either barred by sovereign immunity because it arose out of the negligent supervision claim or, alternatively, that it failed to state a claim for relief under Rule 12(b)(6). As necessary, we elaborate on the court's reasoning later in our analysis.

---

[5] See, generally, Neb. Rev. Stat. § 30-2207 (Reissue 2016) (death presumed after 5 years of unexplained absence).

[6] Compare, e.g., *Trausch v. Hagemeier*, 313 Neb. 538, 985 N.W.2d 402 (2023) (while court may take judicial notice of matters of public record without converting motion to dismiss into motion for summary judgment, documents requested to be judicially noticed must be marked, identified, and made part of bill of exceptions).

- 831 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

Based on these determinations, the district court entered a judgment, styled as an order, that dismissed Larsen's "[c]omplaint and any amendments thereto." We understand this language to have effectively dismissed Larsen's complaint without leave to amend, and no party suggests otherwise.

Larsen filed this timely appeal, and we granted her petition to bypass the Nebraska Court of Appeals.

## II. ASSIGNMENTS OF ERROR

Larsen assigns, consolidated and restated, that the district court erred when it dismissed her complaint on the grounds (1) the tort claims alleged were barred by sovereign immunity under the due care exemption in § 13-910(1), (2) the tort claims alleged were barred by sovereign immunity under the discretionary function exemption in § 13-910(2), and (3) the allegations in the complaint failed to state a claim upon which relief can be granted.

## III. STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[7]

[2] Whether the allegations in a complaint constitute a cause of action under the PSTCA, and whether the allegations set forth claims which are precluded by an exemption under the PSTCA, present questions of law for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.[8]

## IV. ANALYSIS

[3] When dismissal of a complaint is requested under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim, courts should consider

---

[7] *Barber v. State*, 316 Neb. 398, 4 N.W.3d 844 (2024).

[8] See *id.*

- 832 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

the Rule 12(b)(1) grounds first and should consider the Rule 12(b)(6) grounds only if the court determines it has subject matter jurisdiction.[9]

### 1. Dismissals Under Rule 12(b)(1)

Larsen's first two assignments of error challenge the trial court's determination that her tort claims were barred by sovereign immunity under the due care exemption in § 13-910(1) and/or the discretionary function exemption in § 13-910(2). Larsen generally contends that the court could not determine, from the face of the complaint, whether either exemption applied to her claims.

Before we consider Larsen's arguments, we review the principles of sovereign immunity that inform our analysis, after which we review several cases that provide a useful framework for analyzing motions to dismiss under Rule 12(b)(1) based on assertions that the claim falls within a PSTCA exemption.

### (a) Sovereign Immunity Principles

[4-6] The sovereign immunity of the State and its political subdivisions is grounded in Neb. Const. art. V, § 22, which provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." We have long held that this constitutional provision is not self-executing and that no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided.[10] The Legislature has enacted the PSTCA to govern tort claims

---

[9] See, e.g., *Ryan v. State*, 317 Neb. 337, 9 N.W.3d 888 (2024) (Stacy, J., concurring); *Holmstedt v. York Cty. Jail Supervisor*, 275 Neb. 161, 745 N.W.2d 317 (2008); *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005).

[10] E.g., *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021).

- 833 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

against political subdivisions, and public school districts are political subdivisions for purposes of the PSTCA.[11]

[7,8] Under the PSTCA, a political subdivision has no liability for the torts of its officers, agents, or employees, "except to the extent, and only to the extent, provided by the [PSTCA]."[12] In suits brought under the PSTCA, a political subdivision is "liable in the same manner and to the same extent as a private individual under like circumstances," except "as otherwise provided in the [PSTCA]."[13] Through the PSTCA, the Legislature has allowed a limited waiver of a political subdivision's sovereign immunity with respect to some, but not all, types of tort claims.[14]

[9,10] Section 13-910 of the PSTCA expressly exempts certain types of tort claims from the limited waiver of sovereign immunity.[15] Stated differently, the exemptions in § 13-910 describe the types of tort claims for which a political subdivision has not consented to be sued.[16] When an exemption under the PSTCA applies, the political subdivision is immune from the claim and the proper remedy is to dismiss it for lack of subject matter jurisdiction.[17]

With these principles in mind, we briefly review case law that illustrates how courts should analyze the applicability of PSTCA exemptions when the question of sovereign immunity is presented in a motion to dismiss the complaint pursuant to Rule 12(b)(1). We then consider the assignments of error regarding the trial court's determination that Larsen's

---

[11] See *MacFarlane, supra* note 4.

[12] § 13-902. See *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011).

[13] § 13-908.

[14] *Edwards, supra* note 10.

[15] *Id.*

[16] *Id*.

[17] *Id*.

- 834 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

claims are barred by the PSTCA exemptions under the due care exemption in § 13-910(1) and the discretionary function exemption in § 13-910(2).

### (b) Analyzing PSTCA Exemptions on Motions to Dismiss

This court has issued several opinions that provide guidance to trial courts on how to analyze a Rule 12(b)(1) motion that asserts a tort claim is barred by one of the statutory exemptions under the PSTCA or the related State Tort Claims Act (STCA).[18]

In the 2024 case *MacFarlane v. Sarpy Cty. Sch. Dist. 77-0037*,[19] a student sued a school district under the PSTCA for injuries sustained while pole-vaulting on school property. The defendant moved to dismiss the complaint, asserting the claim was barred by sovereign immunity under the recreational activity exemption in § 13-910(13). The district court agreed and dismissed the complaint.

On appeal, our analysis focused on the plausibility of the allegations of the complaint. We explained that, accepting the allegations as true and drawing all reasonable inferences therefrom in favor of the plaintiff, "the ultimate question is whether a plausible path could exist for liability outside of the recreational activity exemption."[20] In *MacFarlane*, we concluded that based solely on the pleadings, we could not rule out the possibility that the plaintiff's claim might fall outside the scope of the PSTCA exemption. Reasoning that the applicability of the exemption could not be determined from the face of the complaint and that a more fully developed factual record was needed to resolve that issue, we reversed the district court's dismissal and remanded the cause for further proceedings.

---

[18] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2024).

[19] *MacFarlane, supra* note 4.

[20] *Id*. at 721, 6 N.W.3d at 539.

- 835 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

We applied similar reasoning in *Brown v. State*,[21] a negligence case filed under the STCA. In that case, the plaintiff alleged he was injured at a state recreation area when the picnic table where he was sitting was struck by a mower operated by a state employee. The court granted the State's motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), reasoning that the plaintiff's claim fell within the STCA's recreational activity exemption[22] and therefore was barred by sovereign immunity. The plaintiff appealed, and we reversed.

We explained in *Brown* that for the recreational activity exemption in § 81-8,219(14)(a)(i) to apply, the following elements must be met: (1) The claim must relate to a recreational activity on property leased, owned, or controlled by the State; (2) the claim must result from an inherent risk of that recreational activity; and (3) no fee must have been charged for the plaintiff to participate in, or be a spectator at, the recreational activity.[23] Because the complaint did not allege the plaintiff was engaged in any particular recreational activity when he was injured, we concluded that the allegations of the complaint and the reasonable inferences therefrom did not allow the court to determine the applicability of the exemption. We noted that "the development of additional facts may reveal that [the plaintiff] was engaged in one or more specific recreational activities while sitting at the picnic table, [but] the face of his complaint simply does not permit such a conclusion as a matter of law."[24] And we explained that unless and until the specific recreational activity, if any, could be identified, there was "no principled way to apply the remaining statutory elements to determine whether [the plaintiff's] tort claim

---

[21] *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020).

[22] See § 81-8,219(14).

[23] *Id.*

[24] *Brown, supra* note 21, 305 Neb. at 123, 939 N.W.2d at 362.

- 836 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

is related to that recreational activity and whether his claim resulted from an inherent risk of that recreational activity."[25]

Although different exemptions are at issue here than were considered in *MacFarlane* and *Brown*, we apply the same analytical framework to consider whether the applicability of the exemptions can be determined at this stage of the proceedings. We consider only the well-pled allegations of the complaint and the reasonable inferences therefrom, but not the conclusions. We then ask whether, based on those allegations and reasonable inferences, any plausible path could exist for liability outside either the due care exemption in § 13-910(1) or the discretionary function exemption in § 13-910(2).

In the sections that follow, we consider each exemption in turn. We ultimately conclude here, as we did in both *MacFarlane* and *Brown*, that the applicability of these exemptions cannot be determined from the face of the complaint and that a more fully developed factual record is needed to resolve the school district's assertion that Larsen's claims fall within the scope of such exemptions.

### (c) Due Care Exemption

Under the due care exemption in § 13-910(1), the PSTCA does not apply to "[a]ny claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute, ordinance, or officially adopted resolution, rule, or regulation, whether or not such statute, ordinance, resolution, rule, or regulation is valid."

Nebraska has two published opinions discussing the due care exemption under the PSTCA: *Reiber v. County of Gage*[26] and *Doe v. Omaha Pub. Sch. Dist.*[27] Both cases illus-

---

[25] *Id*.

[26] *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019).

[27] *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), *overruled on other grounds Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020).

- 837 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

trate the type of developed record required for a court to determine whether a claim is barred by this exemption.

In *Doe*,[28] the complaint alleged that a school district failed to protect a student from being sexually assaulted by another student at school. The school district moved to dismiss for lack of jurisdiction, asserting it was immune from suit under several PSTCA exemptions, including the due care exemption in § 13-910(1). The trial court agreed and dismissed the complaint with prejudice, although it is unclear from the opinion what statute or regulation the district relied upon to support the applicability of the exemption. On appeal, we reversed, noting that the face of the plaintiff's complaint alleged the school district "failed to exercise due care"[29] and that in the "absence of a factual record, we [could not] determine whether"[30] the due care exemption applied.

Our most extensive analysis of the due care exemption occurred in *Reiber*, where we stated that the language of the exemption found in § 13-910(1) is "clear and unambiguous"[31] and provides immunity "for actions based upon the acts or omissions of an employee exercising due care in the execution of a [statute, ordinance,] rule or regulation."[32] *Reiber* involved a negligence action brought against a county sheriff by a mother after her son committed suicide while being held in the county jail. One of the jurisdictional issues was whether the defendants had sovereign immunity under § 13-910(1). The applicability of the exemption was decided on a fully developed record after a bench trial at which the relevant jail standards and regulations were identified and evidence was adduced establishing that jail employees exercised due care in carrying out those jail standards and

---

[28] *Id.*

[29] *Id.* at 91, 727 N.W.2d at 458.

[30] *Id.*

[31] *Reiber, supra* note 26, 303 Neb. at 342, 928 N.W.2d at 928.

[32] *Id.* at 341, 928 N.W.2d at 928.

- 838 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

regulations. Because our de novo review in *Reiber* showed that the relevant standards and regulations were part of the appellate record, as was evidence of the course of conduct followed by the defendants, we agreed the due care exemption applied to bar the plaintiff's claim.

Federal cases interpreting the due care exemption[33] under the Federal Tort Claims Act (FTCA)[34] are also instructive. It is generally understood that the due care exemption under the FTCA is

> aimed at ensuring that a statute or regulation's validity is not tested through the medium of a damage suit for tort. . . . In determining whether tort claims are subject to the due care exception, a two-part inquiry applies, wherein first, the court determines whether the statute or regulation in question specifically prescribes a course of action for an officer to follow, and second, if a specific action is mandated, the court inquires as to whether the officer exercised due care in following the dictates of that statute or regulation.[35]

*Reiber*, *Doe*, and cases interpreting the FTCA illustrate that determining whether the due care exemption applies necessarily involves (1) identifying the specific statutes, ordinances, rules, or regulations that prescribe the course of conduct to be followed and (2) examining the evidence to determine whether the employee or employees exercised due care in following the prescribed course of conduct. These cases also illustrate

---

[33] See 28 U.S.C. § 2680(a) (2018) (FTCA does not apply to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid").

[34] See 28 U.S.C. § 1346(b) (2018).

[35] 91 C.J.S. *United States* § 225 at 324 (2024). See *J.P. v. U.S.*, 679 F. Supp. 3d 911 (D. Ariz. 2023) (court must consider whether statute or regulation at issue specifically prescribes course of action to be followed and, if it does, whether officer exercised due care in following dictates of that statute or regulation).

- 839 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

that, ordinarily, the legal question of whether the due care exemption applies to a particular claim cannot be decided in the absence of a developed factual record.

Larsen's complaint does not contain the factual allegations necessary to determine the applicability of the due care exemption. The district court relied heavily on the complaint's reference to Ryan's IEP, but that reference did not cite a specific statute, rule, or regulation that prescribed the conduct that was to be followed when educating and supervising Ryan. Indeed, the complaint does not allege that *any* rule, regulation, or statute prescribed a course of action the school district was to follow. Instead, it alleges that the school district had a duty to exercise reasonable care when supervising Ryan and that it failed to do so.

Limiting our analysis to the allegations in the complaint and the reasonable inferences therefrom construed in the light most favorable to Larsen, we conclude the district court erred when it found that the due care exemption applied to bar Larsen's claims. Instead, our de novo review of the complaint persuades us that a plausible path for the school district's liability may exist outside the due care exemption,[36] and therefore, determining the applicability of this exemption must await a more developed factual record.

### (d) Discretionary Function Exemption

The discretionary function exemption in § 13-910(2) states that the PSTCA does not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." A nearly identical exemption is codified at § 81-8,219(1) of the STCA. When an exemption contained in the PSTCA is nearly identical to an

---

[36] See *MacFarlane, supra* note 4.

- 840 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

exemption contained in the STCA, cases construing the STCA exemption are applicable to the analysis.[37]

[11-13] The purpose of the discretionary function exemption is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.[38] The discretionary function exemption extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions.[39] It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exemption applies in a given case.[40]

[14] A two-part analysis determines whether the discretionary function exemption applies.[41] First, the court must consider whether the action is a matter of choice for the acting political subdivision or employee.[42] Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exemption was designed to shield.[43] Both parts of the analysis must be met for the exemption to apply.[44]

Nebraska has ample case law under both the PSTCA and the STCA addressing this exemption, and at least two such cases hold that determining whether the exemption applies based only on the allegations of a complaint is possible only in the rarest of cases.

---

[37] E.g., *Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024).

[38] *Simpson v. Lincoln Public Schools*, 316 Neb. 246, 4 N.W.3d 172 (2024).

[39] *Id*.

[40] *Id*.

[41] *Id*.

[42] *Id*.

[43] *Id*.

[44] *Id*.

- 841 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

In *Lawry v. County of Sarpy*,[45] landowners brought an action against the county, alleging that negligence in responding to a flood destroyed their property. The complaint specifically alleged that the county properly decided to warn downstream residents of the flooding but then failed to use reasonable care when carrying out the warning because it failed to identify all downstream residents. The district court sustained the county's demurrer based solely on the discretionary function exemption. We reversed this ruling, reasoning that, from the allegations of the complaint, it was impossible to "determine whether the alleged negligence of the county in carrying out the flood warning involved discretionary policy-level decisionmaking or operational-level conduct."[46] We concluded that an "adequate record would have to be developed to separate what decisions qualify as policy from those that may have been only operational or ministerial."[47]

Similarly, in *Doe*, we recognized that when the facts are undisputed, determining whether the discretionary function exemption applies presents a question of law.[48] But "[b]y the same token, however, it is often difficult to undertake such an analysis without a complete factual record."[49] And we emphasized that the difficulty is even more pronounced under notice pleading, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.[50] *Doe* explained that without evidence "concerning the policy and what actually transpired,"[51] it could not be

---

[45] *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

[46] *Id*. at 199, 575 N.W.2d at 609.

[47] *Id.* at 200, 575 N.W.2d at 610 (emphasis omitted).

[48] *Doe, supra* note 27.

[49] *Id*. at 90, 727 N.W.2d at 457.

[50] *Id*.

[51] *Id.* at 91, 727 N.W.2d at 458.

- 842 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

determined from the face of the complaint whether the discretionary function exemption applied.

Here, the district court concluded the discretionary function exemption applied based on the complaint's reference to Ryan's IEP. It reasoned that "[the school district's] formation of the IEP, implementing the IEP, lesson plans, breaks, and the appropriate supervision for students with IEPs" amounted to "'legislative and administrative decisions grounded in social, economic, and political policy.'" It thus concluded that it was a "matter of circumstances and choice" for the school district to leave Ryan unattended in the classroom and that such supervision decisions were part of the "implementation of" his IEP. The trial court based this conclusion in part on an express factual finding that Ryan's IEP "did not require one-to-one supervision."

It is not clear to us how the trial court made any of these factual findings. The complaint alleged no facts about the contents or requirements of Ryan's IEP, and the IEP was neither attached to the complaint nor offered as an exhibit. Moreover, the complaint did not allege that the school district negligently failed to implement or execute Ryan's IEP; instead, it alleged the school district negligently failed to supervise Ryan, despite knowing that he was a child with significant disabilities who had a propensity to wander off the school grounds if left alone.

Limiting our de novo review to the allegations in the complaint and the reasonable inferences therefrom, we conclude a plausible path for the school district's liability exists outside the discretionary function exemption. The district court therefore erred in concluding that Larsen's claim was barred by the exemption in § 13-910(2). Determining the applicability of the discretionary function exemption will need to await a more complete factual record.

- 843 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

(e) Negligent Infliction of Emotional Distress

The district court concluded that to the extent Larsen's negligent infliction of emotional distress claim arose out of her negligent supervision claim, it too was barred by sovereign immunity under the due care exemption and/or the discretionary function exemption. For reasons we have already explained, the applicability of those exemptions cannot be determined from the face of the complaint. The trial court erred in concluding that Larsen's claim of negligent infliction of emotional distress was barred by sovereign immunity.

However, because we are reversing the judgment and remanding the cause for further proceedings, we will also consider the trial court's alternative finding that Larsen's complaint failed to state a claim for negligent infliction of emotional distress and should be dismissed pursuant to Rule 12(b)(6).

## 2. Dismissals Under Rule 12(b)(6)

[15,16] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face.[52] In cases where a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.[53] Because Nebraska is a notice pleading jurisdiction, we have explained that a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief; a party is not required to

[52] *Rodriguez v. Catholic Health Initiatives*, 297 Neb. 1, 899 N.W.2d 227 (2017).

[53] *Id*.

- 844 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

plead legal theories or to cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.[54]

[17,18] Although Larsen's complaint characterizes her claim for negligent infliction of emotional distress as a separate cause of action, we have said "an 'emotional distress claim is not a cause of action, but, rather, a separate theory of recovery or element of damage.'"[55] Generally, for a plaintiff in Nebraska to recover for negligent infliction of emotional distress as a bystander, there must be evidence establishing (1) a seriously injured victim as the result of the proven negligence of the defendant, (2) an intimate familial relationship between the victim and plaintiff, and (3) emotional distress suffered by the plaintiff that is medically diagnosable and so severe that no person could be expected to endure it.[56]

The district court determined that Larsen's complaint did not, and could not, allege sufficient facts to show the first factor (a seriously injured victim). The court acknowledged that Larsen's complaint included allegations that a "'preponderance of the evidence'" shows Ryan "'more likely than not'" is dead. But according to the court, it could not assume the truth of this allegation because the probate court had entered an order finding there was not yet clear and convincing evidence of Ryan's death.

Larsen challenges the district court's reliance on the probate court's order, arguing it was error for the district court to give the probate order preclusive effect in this negligence action. We need not consider the parties' arguments about issue preclusion, however, because we reverse the judgment of the district court for another reason.

[19,20] Although the district court purported to take judicial notice of the decision of the probate court, no exhibit

---

[54] See *id.*

[55] *Hamilton v. Nestor*, 265 Neb. 757, 760, 659 N.W.2d 321, 324 (2003).

[56] See, *Vosburg v. Cenex-Land O'Lakes Agronomy Co.*, 245 Neb. 485, 513 N.W.2d 870 (1994); *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985).

- 845 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

relating to any probate proceeding was identified, marked, received, or otherwise made part of the appellate record in this case. This is important, because the mere taking of judicial notice does not circumvent the necessity of presenting evidence in a bill of exceptions.[57] And a bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made part of the bill of exceptions may not be considered.[58] As such, we see nothing in the record before us that supports the district court's finding related to the probate proceeding, nor have the parties directed us to anything.

And in any event, the district court overlooked the fact that Larsen's claim for negligent infliction of emotional distress was not based solely on an allegation that Ryan is deceased. The complaint also alleged that Ryan has not been seen since May 17, 2021, and that if he has not died, he has "suffered severe physical harm." The complaint alleged Ryan was unable to care for himself, could not regulate proper eating and drinking, and was unable to identify and avoid dangerous situations. It also alleged he could not swim and was incapable of making rational choices. Confining our analysis to the allegations in the complaint and the reasonable inferences therefrom construed in the light most favorable to Larsen, Larsen has alleged sufficient facts to state a plausible claim that Ryan suffered a serious injury.

In its brief, the school district argues the complaint also fails to allege sufficient facts that Larsen suffered emotional distress that was medically diagnosable and so severe no reasonable person should be expected to endure it. It is not clear from the record whether this argument was raised before the district court, and we question whether the issue has been

---

[57] *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020).

[58] *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

- 846 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
LARSEN v. SARPY CTY. SCH. DIST. NO. 77-0027
Cite as 319 Neb. 823

preserved for appellate review.[59] But even assuming it has been preserved, it is without merit.

The complaint alleges that Larsen "suffers from and now must be treated for severe emotional trauma and distress," and further alleges no reasonable person should be "expected to endure the trauma of wondering what horrors have befallen [the person's] disabled child." Accepting these allegations as true, the reasonable inferences therefrom are sufficient to state a plausible claim that Larsen suffered emotional distress that was medically diagnosable and so severe no reasonable person should be expected to endure it.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded
for further proceedings.

---

[59] See, e.g., *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023) (declaring that when issue is raised for first time on appeal, it will be disregarded because lower court cannot commit error related to issue never submitted to it).